Jeffery v. Howes and Mr. Brill, I guess we'll hear from you. May it please the court, my name is Gregory Brill and I represent Jeffery Howes, Chapter 13 debtor below, and his wife Tanya Howes, who were both at Brasiri plaintiffs below. Your Honors, this case involves a servicer, or a former servicer, that was merely exploiting the existence of an obligation, and that was abusing the judicial process to avoid the evidentiary burdens that the law imposed on it. Your Honors, the judges below committed several major errors. The most glaring one was that they failed to apply the 12B6 standard correctly. They failed to take the complaint at face value. Let me just get to the core of a couple of problems that I have that you maybe could address. The first is there was some question about whether Carrington or Christina, Carrington acting on behalf of Christina, had title to the note, your client's note. And Carrington, of course, filed a proof of claim in the bankruptcy, and you challenged it, putting in all the question marks about whether the assignments were proper, the line of assignments, and how Carrington got it. So the district court said, I'm going to start by requiring Carrington to give us a title, a line of titles, how they got title through the assignment. Under oath, subject penalties approved. Carrington filed that. The court then said, now you can amend your complaint accordingly, or you can object to their proof of claim to challenge what they have done. Instead of doing either of those, you appealed. So the question is, what do we have before us? I mean, basically, we have an unopposed affidavit of Carrington saying they have title, they attached the assignments to the affidavit, they gave the date, and they did it under oath, as the judge said. And said, now, House, come in and show that it's wrong so that we can test the thing. He gave you a full opportunity to raise every complaint you wanted about the line of title. And instead of taking any of the possibilities in the court below, you took an appeal from that order. Now, what are you appealing? What's wrong with that order? Yes, Your Honor, there are several points here. First of all, Carrington never filed a proof of claim. It was Wells Fargo that filed a proof of claim. And they claimed that they were the holder of the note. Carrington appeared after the fact. Well, that's all right, but it doesn't matter after the fact. The question is, I'm asking a procedural question. Yes, Your Honor. The court said the claimant, the most recent claimant of your note, your client's note, is Carrington. And they came in later. They got an assignment. They came in later. And your argument, of course, naturally was, well, there's a lot of problems in the background before Carrington got it, so to speak. And the court said, okay, I'll take you, accept your point, and we'll start procedurally. We'll have Carrington file the affidavit and list the assignments by which it got ownership to the note. And after they filed, then the court turned to you. I understand, Your Honor. And gave you two options, and you took neither. So why shouldn't we accept Carrington's now as a conceded, waived statement that Carrington owns the note and can enforce it against your client? Well, because Carrington's interest, number one, Carrington's interest derived solely from Wells Fargo, who filed the initial proof of claim. I understand, but you had the opportunity to prove that, and we can't accept what you're saying because you didn't do it below. Well, no, Your Honor. The problem is that our claim for fraud got dismissed with prejudice. That's a different issue. I'll get to that in a minute. I'd like you to address my procedural problem. Yeah, exactly. But that dovetails to this procedural problem because we elected to stand on our complaint because we believe we should have been at least granted leave to amend that claim. You were granted leave to amend. We did not get leave to amend the fraud claim, Your Honor. Moreover, the counsel below was threatened with – Fraud has its own problems from your point of view. I'll raise those issues so you can address them. But all the other claims are based on the notion of who has title to enforce the note. And the court gave you an opportunity to amend the complaint, to attack the proof of claim, to do anything to challenge Carrington's affidavit because Carrington is the most recent holder of the note, allegedly. And they said they are the holder of the note under oath. And now you can challenge that. But you never did. Well, Your Honor, as Judge Hollander herself wrote, if the claims are dismissed without prejudice but later the complainant elects not to amend, they become dismissed with prejudice. So the reason this case is appealable and the reason that this court can render a decision – I'm talking about whether you have any right to challenge Carrington's assertion under oath that it has title to the note and can enforce it against the House. Yes, Your Honor, that's what I mean by appealable. Of course we have the right to challenge Carrington's assertion. Do you just not have an answer? Because you're not addressing it. The question is – it's really very simple. You had an opportunity to amend. You had an opportunity to challenge the affidavit. You did not. Why does it not stand in? And that's – Your Honor, because the dismissal with prejudice of the first claim – There's never been a challenge below to tee that up for you to argue on appeal. You can't argue it here.  Excuse me. Because the fraud claim was dismissed with prejudice and we elected to stand on that. So in other words, we're coming all the way up here and saying we should have been granted at least one leaf to amend that claim. And we can clearly show that, first of all, even the initial complaint contains sufficient elements. But even if it didn't, we had at least one shot at amending that. And then during that amendment, we would have made this challenge that Your Honor is talking about now. Let's move back to the fraud claim because you'd like to keep going back to that. Does your fraud claim rest on the notion that the assignments into and out of the pool somehow changed the character of your client's obligations? No, it does not. It does not depend on that at all, Your Honor. It seems to me that your allegation is that somehow because the pool showed it going in and coming out and there's nothing – no amounts owed, therefore there was a fraud that perpetrated. Your Honor, unfortunately, the complaint emphasized that side of it, but it doesn't mean that the claim wasn't stated. Well, your argument actually seems to have changed a bit over time. It seems to me that you argued before the bankruptcy court that the termination of the trust extinguished the note. Well, my predecessor argued that. Excuse me, please. Well, it's your client. You're now conceding the enforceability of the note, but you're questioning Wells Fargo's right to enforce it, and yet you acknowledge throughout your course of dealings with them that Wells Fargo was the servicer. So which exactly is your argument? Well, Wells Fargo was the servicer, but at some point it stopped being the servicer. You're not – you're no longer arguing, I take it, that termination of the trust extinguished the note. That's no longer your argument. No, I would never argue that. And actually, Your Honor, that was one of the arguments below, but it's not the whole story. And to take that out of context or isolate that and say that because of that the complaint fails is improper. To say termination of the trust terminates a note, is it not? What is the question, Your Honor? The termination of a trust terminates a note. The termination of the trust would not terminate the note. Exactly. But that's irrelevant. Was the trust, in fact, terminated? Yes, the trust, according to the record, the record establishes conclusively that the trust terminated. Yes. And it wasn't just that the trustee was removed? No, it wasn't just that, Your Honor. And the reason – And the secure interest in the property was extinguished? No, Your Honor, we could not say that. Well, where was the security if you don't have the deed of trust? The exhibits to the complaint show that the trust terminated because it apparently transferred all the assets out. Are we talking about a consolidated trust or are we talking about the deed of trust? We are talking about the consolidated securitization trust. Does the deed of trust feel good? Yes, the deed of trust is still good. The security interest is there? Yes, the security interest is there. Notice that? What we don't have – Tell me where the fraud is. The fraud is – How did you allege that what Wells Fargo did was false and misleading, that the deed of trust is there, the note is there, and the obligation still exists? Yes, Your Honor. Well, importantly – The security interest in the house is still there? Yes, Your Honor. Importantly, first of all, on page 380 of the appendix, there is a statement by Wells Fargo that the note is endorsed either to creditor or otherwise properly endorsed, and the creditor, which is named as Wells Fargo Bank, is in possession of it. That statement was made on March 15, 2013. Less than a month before, on February 12, the same entity, Wells Fargo, executed an affidavit attesting that the note had been lost. So a month later, they claim that they're in possession of the lost note. That is fraud, Your Honor. Which is good, though. You have the note. You have to have the note to come forth with it. You can't – you don't come with – there's no note. Exactly, but that's what I'm saying. If they didn't find the note, what's the problem? They can't even see it now. If there's no note, you're in good shape. Exactly. Exactly, Your Honor. So is there a note? Not on this record, no. There is no note. There's no note that exists anymore. You now represent that. Well, I can't represent that the note doesn't exist. I can represent that at that time when they were making that statement, they did not have possession of the note. That I can represent. How do you know that? I thought the affidavit was that it was lost, but they had possession of it. I mean, there's a chain of assignments in this case where the note is assigned from one bank to another, which is pretty normal in this day and age. And the question is the note was lost and they filed an affidavit, but that doesn't mean it doesn't exist. The obligation – the note was signed by your client. You negotiated for months with Wells Fargo to get a modification. And that's a whole problem in itself because that resulted in delays. Are you alleging that your client has discharged the debt? No, Your Honor. By the note. Well, then, if you still owe money and you acknowledge that you still owe money on the note, on the debt secured by the note, I'm still having trouble with where your fraud is. Your Honor, the fraud is in the statement that Wells Fargo is the holder in possession of the note properly endorsed to it. That's old history right now because Carrington is the assignee, is the most recent holder, and the court required Carrington to demonstrate it's the most recent holder. And that's the only bank that's going to be able to enforce it against you at this point. And you have not challenged Carrington's right to enforce the note. Your Honor, because we should have been granted leave to amend the fraud claim. You were granted leave to amend to challenge the affidavit, which is what stands. It's not the fraud claim, though, and the fraud is still in the record. There is no fraud. I just specified to the court the statement. There's no fraud independent of that, and you just acknowledged that because you're arguing that what supports the fraud is the statement that the note was lost but we're in possession of the note. There's no independent free-floating fraud. Well, it doesn't have to be independent and free-floating. It only has to be a materially false statement. It has to be a statement made to your client which injures your client on a particular date and at a particular time. Now tell me when the statement was made to your client that implicated your client and caused your client any injury. Your Honor, that statement was made on March 15, 2013, in the proof of claim that was filed with the bankruptcy court that contained a statement that could not have been true, and we can conclusively, the record establishes Could not be true? Well, no, that they were in possession of it could not be true because they had acknowledged that it was lost. And the harm to your client is what exactly? The harm to my client? Can you acknowledge that? As the Sixth Circuit said in the Slorp case? But your client isn't challenging the fact that the debt is owed. It doesn't need to. The affidavit stands undisputed as evidence that Carrington is the assignee. So where's, I'm having trouble seeing the fraud, but I'm having more trouble seeing the harm. Your Honor, the harm is that the proof of claim containing a false statement had to be challenged by my client, and he was expending lots of legal resources to defend against that proof of claim. An appellate court in the Sixth Circuit in Slorp said that that constitutes sufficient harm. You can ask the court below for sanctions. You can oppose. You can prove it's fraud or wrong. It's not a fraud. But could you do that? Just a minute. Your statement there is that in the proceedings there was a false statement made, and you can go to the court and sanction that. That's not an independent tort against you. That's a statement in the proceeding which you allege is false, and the court could sanction that. You could oppose the proof of claim. You could oppose the affidavit. But that is all finessed by the fact that Carrington is alleged in this proceeding to be the current holder of the note. Your Honor, we would have gotten to Carrington had we gotten leave to amend because the courts concluded that there was no possibility. Why didn't you amend? Why didn't you amend after the court said you have leave to amend? Your Honor, my client stood on their original complaint because their position is that the claim has stated initially. Your original complaint was filed at a time when Wells Fargo reportedly held the note. The final proceeding in this case had Carrington as the assignee, and Carrington filed a proof of affidavit showing it had the right to enforce the note. Now, you were given the opportunity to challenge that, and let me just explain why you didn't. Your Honor, we didn't challenge it below because we believe that we have the right to proceed with the fraud claim as well as all the other claims. We're going to pursue it against Wells Fargo. We're going to pursue it against Wells Fargo. Well, why don't you go file some suit against Wells Fargo? I don't see where you'd get even halfway to first base on that. But your claim, your note is being enforced today by Carrington. Again, their interest is derivative from Wells Fargo, and Wells Fargo never established its right to enforce the note. They claimed it's derivative. They claimed they got legitimate assignments. They gave it a list of dates for every assignment which got the note to them, and you never challenged it. Your Honor, we did challenge that, and in our pleadings, the last two assignments. You never challenged it. You never challenged that. We did, Your Honor. In the record, there was pleadings submitted by prior counsel, and they specifically argued that. After Carrington filed its affidavit? It would have been on appeal to the district courts. I said after Carrington filed its affidavit. Did you oppose that? Yes. What did you say? Where is that in the record? That is in the motion to reconsider. That is in the motion to reconsider. That was on the fraud claim. Your Honor, that is in the motion to reconsider. During the proceedings below, prior counsel specifically told the judge that now we have this affidavit. It doesn't comport with a lost note affidavit requirement. Let me ask you a question. We were challenging it. At least we can understand the nature of your argument. This is a note that Peter Trust initially made with a different bank, Columbia Bank. In the process of it, Wells Fargo becomes the servicer of it, which includes having to give the trust, the trustee, and all of those things. They put it in a consolidated trust type situation. Is your allegation that the termination of the consolidated trust was false and misleading, and therefore Wells Fargo was not part of this, and that the subsequent acquisition of this by Carrington, for which you've not challenged in any shape or another, is derivative through Wells Fargo, though the deed of trust can know you. There's no question about the validity of it, nor the validity of the fact that Carrington now has it. But your challenge is that Wells Fargo terminated this consolidated trust without telling you or without some effect. No, Your Honor. I see that my time is up. May I answer the question? Yes. Your Honor, our position is that the termination of the trust changed the principle for whom Wells Fargo was servicer. So because of that change in the principle, Wells Fargo no longer was the agent of the secured party. So when it started prosecuting this case and enforcing the note without being the agent of the secured party at that point, that was improper, that violated my client's rights. That is the fraud, and that is the reason that my client was not able to challenge Carrington. Ultimately, with the fraud that you allege, you are dissatisfied about the method of transfer and the agent with which it happened. But at no time did you contest at any time that this is an obligation that still exists through the execution of a deed of trust and a note that Carrington now has and alleges we have this, and we are before the court now with it. And the court says, well, tell us how that's going to mean anything. And you're saying it's just they don't have authority to have it because they got it from Wells Fargo. Is that your argument? Yes, my argument. That's part of my argument. I think we understand. It's part of my argument, but the bigger problem here is that my client could never get to challenging Christiana or Carrington because of what happened with Wells Fargo. They challenged that, and they stood on their claim, and that claim they were not allowed to amend that claim, Your Honor. All right. You have a little bit of rebuttal. Thank you, Your Honor. Can you come back? Mr. Moulding. Good morning, Your Honors. May it please the Court? Can you give us a little clarity on what's going on here? I think you heard just what went on right then. I did, Your Honor. But maybe it helps to understand the position, because when we hear the position comes to the Court, we like to give it credence. What is your position on this? Interestingly enough, the original note has actually been found. Wells Fargo found it approximately two months ago. I actually have it here with me today. I let opposing counsel view the original note earlier today. But Carrington proved, as has been stated, through an affidavit that they are entitled to enforce the debt obligation. I think Judge Hollander and Judge Gordon both noted, as the Jaime's decision points out, that termination of the trust does not absolve the debtor of their obligation. What about that trust that was terminated? What type of trust did we talk about? It's an investment vehicle. Loans are bundled together in this investment vehicle. It can be any number of loans. Investors then invest in that vehicle, and they're relying on payments being made on these mortgages. There's obviously interest that accrues on any of these mortgages, and they use it as an investment. Is that an authority by which Wachovia is acting as a servicer through this trust alone? Wells Fargo? Yes, Wells Fargo. Yes, Wells Fargo is acting as a servicer on behalf of the trust, the U.S. Bank Trust. If the trust is terminated, do they have any authority at that point? The complaint does not say whether or not they have authority. If that trust is terminated, would Wells Fargo? It would depend on the contractual relationship between the servicer and the trust. There was an assignment in the record. It was hard to follow, and I am in the same boat with Judge Wynn in trying to find clarification. But there was an assignment in 2013 by Wells Fargo as attorney for U.S. Bank. Attorney, in fact. For U.S. Bank. That's the trust. And it assigned it then to Wells Fargo Bank. Correct. So is that how it came out of the pooled trust? Based on the public record, and those assignments were recorded in the land records for Howard County, that is how the loan came to be with Wells Fargo. And that's why Wells Fargo filed an amended proof of claim with Wells Fargo listed as the creditor. And I want to sort of correct what appellants have stated here on the proof of claim. Proof of claim does not identify a note holder. It identifies a creditor. It's a form, the B10 form at the time. It's now changed to the 410 form. But the form identifies a creditor, and the creditor was identified as Wells Fargo. And as the complaint states, for several years, at least three years, appellants were attempting to work out a modification of this loan with Wells Fargo. Wells Fargo was the servicer. They were always entitled to collect the payments at all times relevant to the complaint, including and up through Carrington's filing of a transfer of claim in the bankruptcy case in 2013. Go ahead, Your Honor. No, please finish. And so Wells Fargo was always entitled to collect on the note so long as they were servicing this. And appellants knew that. They were working with Wells Fargo. Right. Now, after it's transferred out of the trust by Wells Fargo as attorney, in fact, for U.S. Bank, Wells Fargo, as attorney, assigns it to Wells Fargo Bank. Wells Fargo Bank then assigned it to Carrington on behalf or to Christina Trust, and the servicer was Carrington, right? Correct, Your Honor. And that was while these proceedings were pending? Correct, Your Honor. Did Carrington file a proof of claim? Just to sort of clear up while the case was pending, originally a claim objection was filed in the underlying bankruptcy case. While that pleading was pending in the bankruptcy case, Christina Trust, with Carrington as servicer, filed what's called a transfer of claim in the bankruptcy case. And all that does is there's a proof of claim already filed in the bankruptcy case. Who filed that proof of claim? Wells Fargo. Wells Fargo filed that proof of claim. And that's after it had been assigned from the pool to Wells Fargo Bank. And then there is a document. What do you call it from Wells Fargo to Christina? It's called a transfer of claim. It simply notifies the bankruptcy court and the debtor in the bankruptcy that the obligation and who you owe the money to has changed. And so the transfer of claim lets the Chapter 13 trustee know also that arrearage payments on the debt. So the only person or entity to enforce it now is Carrington on behalf of Christina Trust? At the time that the complaint was, yes, the note has since been transferred again, Your Honors. Oh, Christina has transferred it again? Christina Trust has transferred it again. It is now held by U.S. Bank Trust National Association as trustee of the PRP, to Powell's Investments Trust with S.N. Servicing Corporation. When was that? It was within the last year. I don't know the exact date. And who do you represent? I represent Carrington in the appeal. I do, in fact, represent S.N. Servicing Corporation and the U.S. Bank Trust in a separate bankruptcy proceeding. And who holds the note right now? Who's the holder of the note today? I have the note here with me today. But I'm holding it on behalf of the note. You're in possession of the note. I'm in possession of the note. But who's the holder? U.S. Bank Trust National Association as trustee of the PRP to Powell's Investments Trust. And your position is that's the only entity now that can enforce this obligation? Correct, Your Honor. And the original note, which I now have in my possession, has a blank endorsement. Why doesn't the recovery of the note and the recent assignments render moot everything that's before us now? We should send it back. I don't disagree with that. Well, I'll ask your colleague that when he comes back up. I think that it does. And I think under Maryland, the commercial law of Maryland. You don't need commercial law. You just need common sense. I agree with that, Your Honor. But it is codified. And so under the commercial law in Maryland and under the Burson and Anderson cases that the Court of Appeals has rendered in Maryland, an original note with a blank endorsement allows the holder to enforce that obligation. And at this point, SN Servicing Corporation as servicer has actually employed me as counsel to represent them in another. Is it a little risky to carry that to court with you? Occasionally, but not here. It's been lost and it's been gone through all these hands and got fingerprints on it? Yes, Your Honor. We do keep it under lock and key at the office in a fireproof room. Anything further? I don't have anything further, Your Honor. It seems that the issues here are clear. There is no fraud that has happened here. My client is entitled to enforce the note. Well, this is probably the tale of this big 2008-2009 mortgage packaging problems we've had. And the idea of banks bundling mortgage obligations and then providing for investments is very appetizing. And I think it's going on again today under much more controlled circumstances. But still, it's the way I gather that the banks recoup their capital to re-lend the money. Exactly. The public invests in it and then the money goes back to the banks and they can make new loans. Precisely, because the Columbia Bank, as a small bank, could not hold on to that debt and continue to give loans. Correct, Your Honor. Thank you, Your Honors. All right, Mr. Burrill. Yes, Your Honor. Just a few points. Well, can I ask you my question? Yes. You may now have a representation made to us in court that your colleague has, Mr. Moulding, has the note and that, in fact, it is being held by a U.S. bank trust as the holder. And that that is the only entity now, not even Christina Bank, whose appellee here is entitled to hold it. And this change of facts seems to me would render moot what is before us. Well, no, Your Honor, because my client is being sandbagged into foreclosure, right? My clients have paid over half a million dollars toward this property. And they were ready to cure the default, except that they were in the mod negotiations with Wells Fargo. And as a result of Wells Fargo's conduct, that default has now grown into a multi-year default. And my clients have no way to challenge that or undo that because of what happened with this case procedurally. First of all, you didn't raise this. This is not part of the claim. The question is whether you have to pay the debt. And your argument below was a singular one. And that was because of the so-called hanky-panky in assignments, you're no longer obliged to pay the debt. And by the way, the assignment in 2013 did not transfer the note. It only transferred the deed of trust, which under Anderson is a nullity. Is there still a debt? Your Honor, there is a debt. And the modifications were unsuccessful. Yeah, but not through the fault of my clients. Not paying the debt? Exactly. The reason they were ready to pay the debt back as early as September 2009. But they were in negotiations with Wells Fargo. Do you have that briefcase like he has the note in this? I mean, we could have a transaction here in court. You could hand the money over to him, and he could give you the note. That is correct, Your Honor. The only problem here is the procedural obstacles that are now in the face of my clients. It would be rendered moot by your proffering the check. Well, but the check is not for the amount of claim that they claim. And we challenge their amount as well. The problem is it's also a dispute about the amount. Why shouldn't this be remanded to let it be sorted out by the bankruptcy court? Yes, exactly, Your Honor. Do you agree with that? Yes, I agree with that. It should be remanded so that the bankruptcy court can sort out the extent of the debt, the amount. All right. Thank you. Thank you, Your Honor. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Allyson K. Duncan, James A. Wynn, Jr.